## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

CRIT MUNCY,

      Petitioner,

v.                                     CIVIL ACTION NO. 3:06-0180

THOMAS McBRIDE, Warden,
Mt. Olive Correctional Complex,

      Respondent.

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on review of United States Magistrate Judge Maurice G. Taylor, Jr.'s Findings and Recommendation that Petitioner Crit Muncy's application for habeas corpus relief be denied. Petitioner filed an application in this Court for a writ of habeas corpus under 28 U.S.C. §2254 on March 3, 2006 (Doc. 2). Pursuant to 28 U.S.C. 636(b)(1)(B), the Court referred Petitioner's application to Magistrate Judge Taylor for submission to the Court of his Findings and Recommendation. Judge Taylor submitted a report to the Court on July 29, 2009, recommending that Petitioner's application be denied. Thereafter, on August 12, 2009, Petitioner submitted objections to the Findings and Recommendation. Upon *de novo* review of Petitioner's Complaint, the Court **ACCEPTS** and **INCORPORATES** the Findings and Recommendation of the Magistrate Judge and **DENIES** Petitioner's request for relief.

## I. Background

Briefly summarized, the evidence at trial established that on October 21, 1999, Kenneth Lyle Messer (hereinafter "Lyle Messer" or "Messer") was shot and killed and his wife, Rylenea Messer, and brother, Paul Messer, were wounded.[1]  The death and injuries of the Messer family members occurred at a trailer park in southern Wayne County, West Virginia, during an altercation between the Messers and Petitioner and Petitioner's father, Birdie Muncy.  The fatal dispute concerned a mobile home, which was apparently repossessed from Petitioner and then sold to Messer.

On October 21, 1999, Messer traveled to the trailer park in Wayne County in order to remove the mobile home.  Sometime that afternoon, Petitioner learned that his former residence was in the process of being removed from the trailer park and so he traveled there, with his father, to stop the removal.  Although it is in dispute which man was in actual possession of the weapons, Petitioner and his father took with them two guns, a .38 caliper Smith and Wesson Revolver and a semiautomatic 9 mm pistol.   When Petitioner and his father arrived at the trailer park, it appeared as though the dispute over the mobile home might be resolved peacefully.  The mobile home was unhooked from the wrecker scheduled to haul it away and Petitioner and his father had returned to their car to leave.  Unfortunately, after Petitioner and his father returned to their automobile, tempers flared and the dispute escalated physically; ultimately leading to gunfire and resulting in the death of Lyle Messer and the wounding of Rylenea and Paul Messer.

Petitioner disputes exactly how (and who) started the physical altercation that led to the death

---

[1]Magistrate Taylor's Findings and Recommendation state that the events pertinent to this case occurred on October 29, 1999.  However, both Petitioner and Respondent's memoranda recite the relevant date as October 21, 1999.  For the purposes of this Opinion, the Court assumes the accuracy of parties' memoranda.

and injuries. In addition, he disputes whether he and/or his father were acting in self defense; whose bullet – Petitioner's or his father's – actually killed Lyle Messer; and whether Messer or any of the other individuals helping him remove the mobile home possessed firearms. It is undisputed, however, that Petitioner and his father turned themselves in to the local police late in the evening of October 21, 1999, and that, in the presence of the police, Petitioner provided a videotaped statement regarding his role in the earlier shootings.

On March 6, 2000, a Wayne County Grand Jury charged Petitioner with the murder of Lyle Messer and malicious wounding of Rylenea and Paul Messer. Following a four-day jury trial before the Honorable Darrell Pratt in the Circuit Court of Wayne County, West Virginia, Petitioner was convicted, on June 7, 2001, of one count of First Degree Murder without a recommendation of mercy and two counts of Malicious Wounding. Subsequently, Petitioner filed a Motion for a New Trial, which Judge Pratt denied on July 12, 2001. Petitioner was then sentenced to life in prison without the possibility of parole for his murder conviction and an indeterminate sentence of not less than two but not more than ten years for each malicious wounding conviction.[2] Thereafter, Petitioner filed an appeal of his convictions with the West Virginia Supreme Court of Appeals.[3] The Supreme Court of Appeals refused to hear Petitioner's direct appeal on March 11, 2003. Petitioner then filed a Petition for Post-Conviction Habeas Corpus with the Wayne County Circuit Court on July 29, 2003. The Circuit Court appointed attorney Matthew Victor to represent Petitioner in his habeas corpus

---

[2]All three sentences were set to run consecutively.

[3]Petitioner filed a notice of intent to appeal on July 25, 2001, and then a Motion for Reconsideration of Sentence in the Wayne County Circuit Court. The Circuit Court heard Petitioner's motion on January 14, 2002, and re-sentenced Petitioner to the same terms for the same convictions. Petitioner's Petition for Appeal to the Supreme Court of Appeals was filed on July 17, 2002.

3

proceedings and conducted an Omnibus Hearing on the petition on March 8, 2004.  Judge Pratt presided over Petitioner's hearing and, in an opinion entered on April 25, 2005, denied Petitioner's request for habeas relief.  Petitioner appealed this denial to the West Virginia Supreme Court of Appeals, which refused to hear the appeal.  Following this refusal, Petitioner applied for a writ of habeas corpus from this Court.  Because Petitioner exhausted his potential remedies in state court, his application for federal habeas relief is appropriate.  *See* 28 U.S.C. § 2254(b)(1)(A) (1996).

Petitioner's petition for post-conviction relief is based upon five major arguments: (1) that he did not receive the effective assistance of counsel guaranteed by the Sixth Amendment; (2) that he was deprived of his Fifth and Fourteenth Amendment right to a fair and impartial grand jury; (3) that the videotaped statement he gave on October 21, 1999, was not given knowingly and intelligently and, thus, in violation of his *Miranda* rights; (4) that there was insufficient evidence at the trial court to convict Petitioner on all counts in the indictment; and (5) that the trial court erred by allowing Petitioner to proceed to trial without re-examining his mental competency.  Additionally, Petitioner's ineffective assistance of counsel argument is broken into three separate claims.  Specifically, that defense counsel was ineffective because Petitioner's trial counsel failed (1) to voir dire the jury regarding whether they were unalterably opposed to recommending mercy, (2) to either advise Petitioner of his right to or file a motion to bifuricate the trial, and (3) to either properly investigate the case or secure witnesses on behalf of Petitioner.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs federal habeas corpus petitions filed by persons in state custody.  28 U.S.C. § 2254.  With respect to these persons, the statute establishes a deferential standard of review.  Specifically, the AEDPA provides that

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §§ 2254(d)(1) and (d)(2). Further, the statute instructs that "a determination of a factual issue made by a State court shall be presumed to be correct." *Id.* at § 2254(e)(1). Said differently, the statute provides that a federal court may grant a habeas petition only if it finds that no reasonable jurist could agree with the State court's interpretation of either the facts or the law.

### III. Analysis

Pursuant to the heightened deference mandated by the AEDPA, and because the Court **ACCEPTS** the Findings and Recommendations of the Magistrate Judge, Petitioner's application for habeas relief is **DENIED.**

1.    *Petitioner's Trial Counsel Was Not Ineffective Under the Sixth Amendment*

Petitioner argues that he did not receive the effective assistance of counsel guaranteed by the Sixth Amendment because his trial counsel: (1) failed to voir dire the jury regarding whether they were unalterably opposed to recommending mercy; (2) failed to either advise Petitioner of his right to, or file a motion to, bifuricate Petitioner's trial; and (3) did not properly investigate the case or secure witnesses on behalf of Petitioner. A claim for ineffective assistance of counsel is adjudged according to the two-part test provided by the U.S. Supreme Court in *Strickland v. Washington*. 466 U.S. 668 (1984). Specifically, a defendant must first show that his counsel's performance was

deficient and then that this deficient performance prejudiced his defense.  *Id.* at 680-82; *see also*

*Williams v. Taylor*, 529 U.S. 362, 390 (2000).

Pursuant to *Strickland*, a defendant is entitled to reasonably effective assistance of counsel based upon professional decisions and informed legal choices, which can be made only after an investigation of a defendant's options.  *Id.* at 680.  The investigation conducted by counsel need not be exhaustive, however, and, because advocacy is an art not a science, strategic choices made by counsel "will seldom if ever be found wanting."  *Id.* at 680-81 (internal quotations and citation omitted).   In other words, under *Strickland*'s test a defendant is merely entitled to *reasonably effective assistance*; meaning counsel's assumptions and strategies were reasonable given the totality of circumstances at the time decisions were made, not in hindsight.  *Id.* at 680-81.  Further, based on *Strickland*'s second prong, even in a case where counsel's performance is deemed unreasonable or deficient, a defendant's Sixth Amendment right to effective counsel is not violated unless the defendant's can show that "counsel's errors resulted in actual and substantial disadvantage to the course of his defense."  *Id.* at 682 (internal quotations and citation omitted); *see, e.g., Williams*, 529 U.S. at 390.

In his Findings and Recommendation, Magistrate Judge Taylor finds that, although a defendant is entitled to voir dire jurors to determine whether they are unalterably opposed to recommending mercy, such questioning is not required and "could potentially appear as conceding something to the jury that counsel vehemently contested during the trial."  *See Magistrate Judge Taylor's Findings and Recommendation* ("*Findings and Recommendation*"), Doc. 18, page 6 (quoting State court's habeas decision).  Thus, Magistrate Judge Taylor, like Judge Pratt, found trial counsel's decision not to voir dire the jury regarding their potential opposition to a recommendation

6

of mercy to be a reasonable strategic decision. *Id.* at 6-7. Because trial counsel may not have questioned the jury on mercy because he did not want to appear to admit guilt during jury selection, the Court **FINDS** that the Magistrate Judge's conclusion is appropriate under *Strickland*. Thus, the Court **ACCEPTS** and **INCORPORATES** this finding. Next, Magistrate Judge Taylor found that trial counsel's decision not to bifuricate Petitioner's trial did not rise to the level of ineffective assistance of counsel because counsel had adequately researched Petitioner's life history and presented such evidence, including "a torrent of mitigating evidence," to the jury. *Id.* at 7 (quoting State court's habeas decision). The Magistrate Judge therefore found that Petitioner did not meet his burden to overcome *Strickland*'s presumption and that trial counsel's decision to hold a unitary trial was a reasonable, strategic choice.[4] *Id.* Pursuant to *Strickland*, the Court **ACCEPTS** and **INCORPORATES** this finding. Finally, the Magistrate Judge denied Petitioner's habeas request on the ground that trial counsel failed to sufficiently investigate the case or secure experts in Petitioner's favor. In doing so, the Magistrate Judge relied on the State court's habeas decision, finding that the State court's determination that trial counsel sufficiently investigated the case and secured experts was not contrary to or an unreasonable application of the law of the U.S. Supreme Court. *Id.* at 9. Such a finding is appropriate under *Strickland* and 28 U.S.C. § 2254. Accordingly, the Magistrate Judge's finding is **ACCEPTED** and **INCORPORATED** herein and, for the reasons

---

[4]The Magistrate Judge's Findings and Recommendation do not directly address Petitioner's claim that counsel was ineffective because he failed to inform Petitioner of his right to bifuricate the trial. Petitioner claims that this failure renders counsel's performance ineffective because such a right is a "fundamental trial right[]." *Petitioner's Objections to the Magistrate's Findings and Recommendation*, Doc. 20, 8 (citing *Jones v. Barnes*, 463 U.S. 745 (1983) and A.B.A. Model Rules of Professional Conduct, Rule 1.2(a)). Petitioner, however, fails to provide evidence to support this conclusion and, thus, to meet his burden to prove counsel's performance ineffective on this basis.

set forth above, Petitioner's request for habeas relief based upon ineffective counsel is **DENIED**.

       2.      *Petitioner's Right to a Fair and Impartial Grand Jury Was Met*

Petitioner argues that his Fifth and Fourteenth Amendment right to a fair and impartial grand jury was violated because, prior to deliberation, one of the grand jurors informed the prosecution that he knew the victims in the case. Magistrate Judge Taylor, however, disagreed. Instead, the Magistrate Judge found that, because the grand juror assured the prosecutor that this knowledge would not affect his ability to serve on the grand jury, such knowledge, without more, did not establish that the grand juror was biased for or against Petitioner. *Findings and Recommendation*, 9. Accordingly, the Magistrate Judge found that in light of the lack of proven bias, and based upon Petitioner's subsequent conviction by a petit jury, Petitioner failed to show that the State court's decision to deny habeas relief on this claim was contrary to or an unreasonable application of the law of the U.S. Supreme Court. *Id.* at 9-10 (quoting *U.S. v. Mechanik*, 475 U.S. 66, 70, 73 (1986) ("[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt.") ("[A] petit jury's verdict render[s] harmless any conceivable error in the charging decision[.]").). The Court agrees with this conclusion and, therefore, **ACCEPTS** and **INCORPORATES** the finding and **DENIES** Petitioner relief on this ground.

       3.      *Petitioner's Videotaped Statement Was Given Knowingly and Intelligently*

Petitioner is mildly mentally retarded. Based on this condition, Petitioner argues that the videotaped statement in question was not given knowingly and intelligently and that its use therefore violated *Miranda*. To the contrary, Magistrate Judge Taylor found that, because Petitioner came to the authorities of his own free will and provided the contested statement voluntarily, Petitioner was

not "in custody" at the time of the statement and *Miranda* did not therefore apply. *Findings and Recommendation*, 11.  Alternatively, the Magistrate Judge found that a *Miranda* warning had in fact been issued to Petitioner and that, in the absence of any evidence of coercive police activity, Petitioner's mild mental retardation was not a sufficient basis upon which to find his statement involuntary. *Id.* (citing *Colorado v. Connelly*, 479 U.S. 157, 164 (1986) (holding that "a defendant's mental condition, by itself and apart from its relation to official coercion, should [not] ever dispose of the inquiry into constitutional 'voluntariness'")).  Both findings are supported by the State court's factual conclusions.  Thus, the Court **ACCEPTS** and **INCORPORATES** the Magistrate Judge's ultimate finding that, considered in the totality of circumstances, Petitioner's waiver of his *Miranda* rights was not only voluntary, but also knowing and intelligent. *Id.* at 11-12; *see also* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").  Accordingly, Petitioner's habeas application is **DENIED** on this ground.

4.      *There Was Sufficient Evidence to Convict Petitioner at Trial*

Petitioner argues that he is entitled to habeas relief because the prosecution failed to present sufficient evidence at trial to establish each of the elements of his convictions beyond a reasonable doubt.  In *Jackson v. Virginia*, the U.S. Supreme Court held that "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be ... whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 318-19 (1979) (emphasis in original) (internal quotations and citations omitted).  At trial, the prosecution presented eye witness testimony regarding Petitioner's conduct on October 21, 1999; Petitioner's statement; and additional

9

circumstantial evidence indicating Petitioner's guilt.  The State habeas court found this evidence sufficient to support the convictions beyond a reasonable doubt,[5] *see Opinion and Order Denying Writ of Habeas Corpus Petition Following Omnibus Hearing* ("*State Habeas Decision*"), Doc. 11, Ex. 8, 17-20, as did Magistrate Judge Taylor.  *Findings and Recommendation*, 13.  In light of the standard set out in *Jackson*, this Court **AGREES** and **INCORPORATES** the Magistrate Judge's finding and **DENIES** relief on this claim.

      5.    *The Trial Court Did Not Err By Deciding Not to Re-examine Petitioner's Competency Prior to Trial*

Petitioner argues that the trial court erred in not re-examining his mental competency prior to trial.  He therefore seeks habeas relief on this ground.  In its *Opinion and Order*, the State habeas court reports that the trial court conducted proceedings to review expert testimony relevant to Petitioner's mental competency on November 22, 2000, and April 25, 2001.  *State Habeas Decision*, 20-21.  During these proceedings, the trial court reviewed testimony from several medical and psychological experts; including experts retained by both Petitioner's counsel and the State.  Based upon this evidence, the trial court decided to proceed with Petitioner's trial.  *Id.*  The State habeas court found the trial court "correctly proceeded," *Id.* at 22, and Magistrate Judge Taylor agrees. *Findings and Recommendation*, 13.  Without any evidence to the contrary, this Court **ACCEPTS** and **INCORPORATES** the Magistrate Judge's finding that it was appropriate to proceed to trial without re-examining Petitioner's mental competency.  Thus, the Court **DENIES** Petitioner's application on

---

[5]The evidence cited by the State habeas court included testimony that Petitioner was in possession of the .38 caliber Smith and Wesson revolver; that three .38 caliber bullets were retrieved from Lyle Messer's body; that Paul Messer received a gash to the head and was knocked unconscious during a struggle with Petitioner; and that Paul Messer testified to seeing Petitioner shoot Lyle Messer three times.

this ground.

      6.    *Additional Requests*

Finally, Petitioner requests (1) an evidentiary hearing, (2) an enlargement of time, and (3) a certificate of appealability.  Pursuant to 28 U.S.C. § 2254(e)(2), a federal court shall not hold an evidentiary hearing on a claim when a petitioner "has failed to develop the factual basis of a claim in State court proceedings ... *unless* the applicant shows that... the claim relies on – (i) a new rule of constitutional law ... or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence."  28 U.S.C. § 2254(e)(2) (emphasis supplied).  Additionally, a petitioner seeking an evidentiary hearing must show that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense."  *Id.*  Petitioner has failed to meet the burden required to overcome the statutory presumption against holding an evidentiary hearing in federal court and his request is therefore **DENIED.**  Further, Petitioner has not met his burden to support a request for an enlargement of time.  Instead, the Court **FINDS** that Petitioner has received sufficient time to develop and present his case for post-conviction relief, both at his State Omnibus hearing and in the *Memorandum of Law and Facts* he filed with this Court (Doc. 3).  The Court therefore **DENIES** Petitioner's request for more time.  Finally, in accordance with Federal Rule of Appellate Procedure 22(b), an appeal by an applicant for a writ of habeas corpus may not proceed unless a district or circuit judge issues a certificate of appealability pursuant to the AEDPA.  *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).  Under the AEDPA, however, a district court may not issue a certificate of appealability unless the applicant makes a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2).  The Court **FINDS** that Petitioner has

11

not made such a showing and, thus, **DENIES** Petitioner's request to issue a certificate of appealability.

### IV. Conclusion

For the reasons set forth above, the Court **ACCEPTS** and **INCORPORATES** herein the Findings and Recommendation filed on July 29, 2009, and **DENIES** Petitioner's Request for Habeas Relief.  Accordingly, pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court **GRANTS** Respondent's Motion for Summary Judgment (Doc. 11).  The Court **ORDERS** that this action be **DISMISSED** with judgment entered in favor of the Respondent.  The Court **DIRECTS** the Clerk to send a copy of this Order to Magistrate Judge Taylor, all counsel of record, and any unrepresented parties.

ENTER:        September 30, 2009

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE